# STATE OF WEST VIRGINIA

## SUPREME COURT OF APPEALS

**CECIL E. SCOTT,**
**Claimant Below, Petitioner**

**FILED**

February 23, 2018
**EDYTHE NASH GAISER**, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

**vs.)   No. 17-0862**  (BOR Appeal No. 2051880)
                        (Claim No. 2013028581)

**MERCER COUNTY BOARD OF EDUCATION,**
**Employer Below, Respondent**

### MEMORANDUM DECISION

Petitioner Cecil E. Scott, by Reginald Henry, his attorney, appeals the decision of the West Virginia Workers' Compensation Board of Review. Mercer County Board of Education, by Steven Wellman, its attorney, filed a timely response.

The issue on appeal is whether a third right shoulder arthroscopic surgery is reasonable and necessary medical treatment for the compensable injury. The claims administrator denied the request for the surgery on November 9, 2016. The Office of Judges affirmed the claims administrator in its March 17, 2017, Order. The Order was affirmed by the Board of Review on August 28, 2017. The Court has carefully reviewed the records, written arguments, and appendices contained in the briefs, and the case is mature for consideration.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision is appropriate under Rule 21 of the Rules of Appellate Procedure.

Mr. Scott, a plumber, injured his right shoulder on April 22, 2013, when he was unloading heavy pipe from a truck and the pipe fell, jerking his arm downward. A right shoulder MRI performed on April 27, 2013, revealed a large full-thickness tear of the supraspinatus tendon with degenerative arthritic change impinging on the subacromial space significantly from the acromioclavicular joint, inflammatory change of the subscapularis tendon, intraosseous ganglion cyst at the insertion of the tendon into the proximal humerus, and mild degenerative changes of the glenohumeral articular cartilage.

1

Mr. Scott sought treatment with Steven O'Saile, M.D., who performed a right shoulder open rotator cuff repair and right shoulder subacromial decompression on July 26, 2013. The preoperative and postoperative diagnoses were large, retracted, and complete right shoulder rotator cuff tear and right shoulder acromioclavicular arthritis with impingement.

On February 11, 2014, Jerry Scott, M.D., performed an independent medical evaluation. He noted Mr. Scott complained of tenderness in the posterior aspect of the right shoulder. There was no significant tenderness in the acromioclavicular region. Mr. Scott had restricted range of motion. Dr. Scott opined that Mr. Scott had reached maximum medical improvement. Dr. Scott did not recommend any additional medical treatment as any further treatment would be directed at the severe pre-existing degenerative changes.

Mr. Scott re-injured his right shoulder at work on April 3, 2014, when he was using a wrench and felt a pop in the shoulder. A right shoulder MRI and arthrogram performed on April 17, 2014, showed full thickness supraspinatus and infraspinatus tendon tears with significant retraction of the torn tendons, subscapularis tendinopathy, and a new superior labral tear. On June 2, 2014, Mr. Scott underwent a second surgery which included a right shoulder arthroscopy with extensive debridement of the right shoulder including the labrum, biceps stump with rotator cuff, and supraspinatus and infraspinatus tendons. The preoperative diagnoses were right shoulder labral tear and right shoulder rotator cuff tear including supraspinatus and infraspinatus tendons with retraction. The postoperative diagnoses were right shoulder labral tear and right shoulder rotator cuff tear including supraspinatus and infraspinatus tendons with retraction, and rupture of the long head of the biceps tendon.

Dr. Scott performed a second independent medical evaluation of Mr. Scott on September 23, 2014. Dr. Scott opined that Mr. Scott had a history of preexisting degenerative disease of the right shoulder as well as evidence of rotator cuff tear with significant contribution from his degenerative changes. In his opinion, Mr. Scott had reached maximum medical improvement and there was no need for additional medical treatment.

Bruce Guberman, M.D., performed an independent medical evaluation on July 14, 2015. His impression was chronic post-traumatic strain of the right shoulder; status post right shoulder rotator cuff tear with acromioclavicular arthritis and impingement with right shoulder open rotator cuff repair and right shoulder subacromial decompression on July 26, 2013; and recurrent full thickness tears of the infraspinatus and supraspinatus muscles with superior labral tear and rupture of the long head biceps tendon with surgery on June 2, 2014, for extensive debridement of the right shoulder including a labrum biceps stump, rotator cuff tendon, supraspinatus and infraspinatus. In his opinion, Mr. Scott had reached maximum medical improvement.

Prasadarao Mukkamala, M.D., performed an independent medical evaluation on December 15, 2015. He diagnosed a rotator cuff tear of the right shoulder that was treated surgically. He opined that Mr. Scott had reached maximum medical improvement. He noted Mr. Scott continued to have symptoms, most of which were related to the noncompensable degenerative conditions.

2

Mr. Scott was seen in consultation by Gary McCarthy, M.D., an orthopedic surgeon, on February 29, 2016. Mr. Scott reported weakness, numbness, and tingling in his right shoulder. The prior surgeries and physical therapy had not helped. He had returned to work and was working full duty. Right shoulder x-rays showed evidence of mild osteoarthritic changes. Dr. McCarthy diagnosed right traumatic rupture of the rotator cuff, cubital tunnel syndrome, and right carpal tunnel syndrome and recommended a right shoulder MRI, which was performed on April 13, 2016. It revealed supraspinatus and infraspinatus tears with partial retraction and fatty atrophic changes of the muscle, subscapularis tendinopathy with probable partial tear, visible longhead of the biceps tendon within the bicipital groove, and moderate acromioclavicular degenerative changes. On April 27, 2016, Dr. McCarthy diagnosed traumatic rupture of the rotator cuff with laceration of the muscles and tendons of the rotator cuff of the right shoulder. He recommended a shoulder arthroscopy with rotator cuff repair.

Mark Baratz, M.D, an orthopedic surgeon, performed an independent medical evaluation on August 1, 2016. Dr. Baratz diagnosed a massive right rotator cuff tear and right cubital tunnel syndrome. He opined that Mr. Scott had a long-standing history of right rotator cuff tendinopathy and possibly a rotator cuff tear prior to the work injury. However, he had a work-related injury that made the condition more severe and precipitated the rotator cuff repair. He opined that Mr. Scott was a candidate for a latissimus transfer, which is a procedure in which the latissimus muscle is transferred from the arm to the head of the humerus. The purpose of the procedure is to reduce shoulder pain and improve shoulder weakness. Dr. Baratz prepared a supplemental report on September 21, 2016, in which he opined that another attempt at an arthroscopic repair was unreasonable. He stated that "after two prior attempts at repair with a massive retracted tear the chances of finding tissue that can be returned to the footprint of the humerus and heal is exceptionally low".

Rebecca Thaxton, M.D., performed a medical records review on September 26, 2016. She did not recommend authorizing the arthroscopic surgery. In her opinion, Mr. Scott had reached maximum medical improvement. He had pre-injury symptomatic shoulder disease and arthroscopies. Mr. Scott had been evaluated by Drs. Mukkamala, Scott, and Guberman all of whom found Mr. Scott had reached maximum medical improvement. Mr. Scott had symptoms in the right shoulder dating back to 2005. He was diagnosed with osteoarthrosis of the right shoulder on January 3, 2013, less than three months prior to the work injury and arthroscopic surgery had been recommended for the right shoulder years before the injury.

On November 9, 2016, the claims administrator denied a request for right shoulder arthroscopy with rotator cuff repair. The Office of Judges affirmed the claim administrator's denial in its March 17, 2017, Order. It noted Mr. Scott had previously undergone two arthroscopic surgeries which were apparently not successful. The Office of Judges also gave more credence to the opinions of the orthopedic surgeons that had evaluated Mr. Scott than the opinions of the non-orthopedic surgeons who evaluated him. It found the opinion of Dr. Baratz regarding the reasonableness and necessity of the requested surgery to be the most reliable. The Office of Judges found that Dr. Baratz opined that the third arthroscopic repair was not reasonable and instead recommended a latissimus transfer. It also found that the concerns of Dr. Baratz should have been addressed by the recommending doctor in order to provide clarification

on why the surgery was reasonable and necessary. The Office of Judges found that three arthroscopic procedures appeared to be unusual. It determined the concerns of Dr. Baratz were unrebutted and the majority of the medical evidence did not address the request for the arthroscopy. The Board of Review adopted the findings of fact and conclusions of law of the Office of Judges and affirmed its Order on August 28, 2017.

After review, we agree with the Office of Judges as affirmed by the Board of Review. Dr. O'Saile performed two arthroscopic surgeries. Dr. McCarthy recommended the surgery the second time he saw Mr. Scott. He did not indicate why he believed the surgery would be successful the third time. Dr. Baratz explained why the third arthroscopic procedure was not recommended, why he did not believe it would be successful, and provided an alternative for that surgery. The Board of Review did not err in relying on Dr. Baratz's opinion.

For the foregoing reasons, we find that the decision of the Board of Review is not in clear violation of any constitutional or statutory provision, nor is it clearly the result of erroneous conclusions of law, nor is it based upon a material misstatement or mischaracterization of the evidentiary record. Therefore, the decision of the Board of Review is affirmed.

Affirmed.

**ISSUED: February 23, 2018**

**CONCURRED IN BY:**
Chief Justice Margaret L. Workman
Justice Robin J. Davis
Justice Menis E. Ketchum
Justice Allen H. Loughry II
Justice Elizabeth D. Walker